IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA    )
            )
   v.                )      CASE NO. 2:14-CR-636-WKW
            )      (WO)
CHAD LAMAR HOGAN      )

## ORDER

The one-count indictment charges Defendant Chad Lamar Hogan with possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1).  Mr. Hogan filed a motion to suppress the firearm and other evidence, including statements, because, he contends, the evidence and statements were the fruit of a warrantless arrest made without probable cause.  (Doc. # 19.)

On May 15, 2015, following an evidentiary hearing, the Magistrate Judge issued a Recommendation that the motion to suppress be denied.  (Doc. # 33.)  The parties were directed to file any objections to the Recommendation on or before May 29, 2015. (Doc. # 33 at 22.) Defendant did not object to the Recommendation, nor did the Government.  However, on May 28, 2015, Defendant filed a "Motion to Re-Open Suppression Hearing," in which Defendant asserted that he "was not afforded the opportunity to present any evidence" at the suppression hearing. (Doc. # 36 at 1).  The government agreed to the reopening of the suppression hearing (Doc. # 41); therefore, the court granted the motion to reopen the suppression

hearing.  (Doc. # 42.)

On July 14, 2015, the Magistrate Judge held a second suppression hearing. (Doc. # 47.)  At the conclusion of Defendant's testimony, the Magistrate Judge asked Defense Counsel if he had any other arguments to present.  (Doc. # 47 Tr. 10:16.) Defense Counsel responded, "Just those I've already made, Your Honor." (Doc. # 47 Tr. 10:17.)   Defense Counsel requested and was provided an opportunity to submit another post-hearing brief, but Defendant did not file any additional briefing.   The Magistrate Judge entered a Supplemental Recommendation again recommending, based on the lack of objections to the previous Recommendation and the fact that no new legal argument was presented, that motion to suppress be denied. (Doc. # 48.)  On August 17, 2015, Mr. Hogan filed objections to the Recommendation of the Magistrate Judge.  (Doc. # 49.)

## I.   Facts

In June 2013, Montgomery Police Department Det. Greg Schnupp created a "be on the lookout" bulletin ("BOLO") for Mr. Hogan to be picked up and transported to the Montgomery Police Station for questioning as a suspect in several armed robberies.  (Doc. # 32 Tr. 22: 17-24; Government's Exhibit, *see* Doc. # 26.)  Det. Schnupp wanted to question Mr. Hogan because a neighbor of a robbery victim saw one of Mr. Hogan's vehicles in the neighborhood prior to one of the robberies.  (Doc. # 32 Tr. 22: 25, 23:2-5).  At the time that Dt. Schnupp

created the BOLO, he was aware that Mr. Hogan was a convicted felon, but he did not place this information in the BOLO.  (Doc. # 32 Tr. 24:9-11, 25:6-7, 26:16-20.)  On the basis of the nature of the home invasions and Mr. Hogan's criminal history, Det. Schnupp stated in the BOLO that Mr. Hogan was to be considered armed and dangerous.  (Doc. # 32 Tr. 25: 1-7; Government's Exhibit, *see* Doc. # 26.)  The BOLO instructed anyone who located Mr. Hogan to "notify Unit 466/Schnupp or any Major Crimes Detective." (Government's Exhibit, *see* Doc. # 26.)

On June 16, 2013, Montgomery Police Department Cpl. Wesley Pearson, who had a copy of the BOLO, identified Mr. Hogan's vehicle and initiated a traffic stop solely on the basis of the information in the BOLO.  (Doc. # 32 Tr. 12:24-25, 13:1.)  At that time, Cpl. Pearson did not know that Mr. Hogan was a convicted felon.  (Doc. # 32 Tr. 11:23-25, 12:1-2.)  Cpl. Pearson's subjective intent when he initiated the stop was to determine whether the driver of the vehicle was Mr. Hogan and, if so, to detain him and transport him to the police station for questioning.  (Doc. # 32 Tr. 7:5-21, 13:13-20.)  Cpl. Pearson removed Mr. Hogan from his vehicle, placed him in handcuffs, patted him down, and asked him if he had any weapons.  (Doc. # 32 Tr. 7:16-25, 14:13-21.)  Mr. Hogan stated that he had a gun in his car behind the passenger seat.  (Doc. # 32 Tr. 7:5-21, 14:13-21, 18:18-23, 20:7-13.)

Cpl. Pearson then advised Mr. Hogan that he was being detained for

questioning and required him to sit on the curb behind his vehicle for a "couple minutes" until backup arrived. (Doc. # 32 Tr. 7:18-21, 8:12-13.) During that time, Cpl. Pearson contacted Det. Schnupp. (Doc. # 32 Tr. 8:17-20, 25:8-10.) When Det. Schnupp learned that there was a firearm in Defendant's vehicle, he told Cpl. Pearson "to make sure that [Defendant] was handcuffed and that if he did not have the permit for it, that he was currently under arrest for being in possession of a firearm." (Doc. # 32 Tr. 25:8-14.)

Backup units arrived within a "couple minutes." (Doc. # 32 Tr. 7:18-21, 8:12-13.) Several officers then searched Mr. Hogan's car without a warrant and without requesting his permission to do so. (Doc. # 47 Tr. 7:7-16.)

Meanwhile, as Mr. Hogan was still sitting on the curb, Cpl. Pearson advised him of his rights, and Mr. Hogan stated that he wanted to exercise his rights. (Doc. # 47 Tr. 7:23-25, 8:1-5, 8:20-23.) Cpl. Pearson then placed Mr. Hogan in his police vehicle and transported him to the criminal investigations division. (Doc. # 32 Tr. 8:12-16.) Mr. Hogan's vehicle was also transported to the criminal investigations division and treated as a crime scene to preserve evidence. (Defendant's Ex. 1 Bates Stamped Hogan 00089, *see* Doc. # 26.)

## II.    Discussion

### A.    Objection to Findings of Fact

Mr. Hogan takes issue with the Magistrate Judge's finding that, after

4

removing Mr. Hogan from his vehicle and handcuffing him,[1] Cpl. Pearson asked Mr. Hogan if he had any weapons, needles, or anything that could stick or hurt, and in response to that question, Mr. Hogan stated that there was a gun in the car. (Doc. # 33 at 4, 16.)  Mr. Hogan insists that, after removing him from his car and placing him in handcuffs, Cpl. Pearson first asked him if he had weapons on his person, and then asked him if he had any weapons in the car.  At one point during the first suppression hearing, Cpl. Pearson testified that he asked Mr. Hogan if he had any guns or weapons "on him," but then clarified that he "didn't necessarily specify 'on him'" when he asked about guns.  (Doc. # 32 Tr. 7:10-12,14:16-18, 19:12-14.)

This particular factual dispute is inapposite to the sole issue Mr. Hogan raises in his objection to the  Recommendation: "Whether Chad Hogan was under arrest from the moment Officer Pearson had Mr. Hogan step out of his vehicle." (Doc. 49 at 3.)  Nevertheless, court has conducted a *de novo* review of the record with respect to this issue.  *See LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir.

---

[1] Mr. Hogan appears to object to an alleged finding that Cpl. Pearson handcuffed him *after* Cpl. Pearson asked him if he had weapons or a gun in the car.  (Doc. 49 pp. 1-3).  Mr. Hogan insists that, contrary to the testimony of Cpl. Pearson, he was handcuffed before he was questioned about weapons.  Mr. Hogan's objection on this point is inapposite; the Magistrate Judge found that Cpl. Pearson handcuffed Mr. Hogan *before* asking him about weapons.  (Doc. # 33 at 4, 16.).  Moreover, the court notes that the timing of the application of the handcuffs (which is not disputed to have occurred at some point after Mr. Hogan stepped out of the vehicle) is not relevant to the sole legal question Mr. Hogan poses in his objection to the Recommendation: "Whether Chad Hogan was under arrest from the moment Officer Pearson had Mr. Hogan step out of his vehicle."  (Doc. 49 at 3.)  An investigatory stop does not ripen into an arrest simply because an officer handcuffs a suspect - particularly where, as here, the officer has reason to believe the suspect is armed and dangerous.  *See United States v. Hastamorir*, 881 F.2d 1551, 1557 (11th Cir. 1989).

1988); *see also* 28 U.S.C. § 636(b).  As concerns his credibility determinations, the Magistrate Judge performed the role of a trial court in making findings of fact, and this court's review of those findings is deferential.  As explained in *LoConte*:

> To the extent that the magistrate has made findings of fact based upon the testimony of the witnesses heard before the magistrate, the district court is obligated to review the transcript or listen to the tape-recording of those proceedings.  After doing so, however, the factual conclusions reached by the district court are subject only to a "clearly erroneous" standard of review on appeal.

847 F.2d at 749.

Consonant with the foregoing standard of review, the court has read the transcripts of the evidentiary hearings and reviewed the evidence.  After careful consideration of the transcript and the record as a whole, the court finds that the evidence amply supports the Magistrate Judge's findings of fact and that those findings of fact, including those with respect to the credibility of Cpl. Pearson, are not clearly erroneous.  The Magistrate Judge's finding that Hogan stated that he had a gun in response to Cpl. Pearson's question if he "had any weapons," without reference to the location of the weapons, is supported by the testimony of Cpl. Pearson.  (Doc. # 32 Tr. 7:10-12, 19:12-14.)

## B.    Objection to Conclusion of Law

The Magistrate Judge concluded that, viewed objectively, the initial traffic stop of Mr. Hogan was a brief investigatory detention supported by reasonable

suspicion and was lawful pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968).  (Doc. # 33 at 12-18.)  The Magistrate Judge further concluded that the lawful brief detention was occurring when Mr. Hogan stated that he had a gun in the car.  (Doc. # 13: 16-18.)  The Magistrate Judge concluded that the detention subsequently ripened into an arrest when Cpl. Pearson placed Mr. Hogan in the police car to transport him to the criminal investigative division, and that the arrest was objectively supported by probable cause to believe that he was a felon in possession of a firearm.[2]  (Doc. # 33 p. 19.)

Mr. Hogan argues that, during the first suppression hearing, "everyone in the courtroom," including the Magistrate Judge and the prosecutor, believed that Cpl. Pearson fully arrested Mr. Hogan for the purpose of questioning and not because he possessed a firearm.   In support of this argument, Mr. Hogan quotes the following from the hearing transcript:

> THE COURT: . . . So what he was doing was having him arrested to bring him down to question him. Correct?
>
> MR. GEER: Yes, Your Honor.

(Doc. # 32 Tr. 29:10-12.)

---

[2] After the Magistrate Judge issued the Recommendation, another suppression hearing was held during which Mr. Hogan testified that Cpl. Pearson read him his rights after the backup officers arrived and before he was placed in the Cpl. Pearson's police vehicle.  (Doc. # 47 Tr. 7:23-25, 8:1-5, 8:20-23.)  The Magistrate Judge's reasoning that probable cause existed for an arrest for possession of a firearm is applicable if the detention ripened into an arrest at any time after Cpl. Pearson contacted Det. Schnupp, including during the brief period of time Mr. Hogan was sitting on the curb after the backup officers arrived.

However, taken in the context of the record, it is clear that the quoted statements do not refer either to the objective legal status of the detention at the time Mr. Hogan stated that he had a gun in his car or to Cpl. Pearson's subjective belief at that moment in time.  Rather, the Magistrate Judge was asking whether *Det. Schnupp's* intent in issuing the BOLO was to have Mr. Hogan arrested for questioning. (Doc. # 32 Tr. 27:19-25, 28:1-25, 29:1-25, Tr. 30:1-25; 31:1-3.)  At the hearing and in his Recommendation (Doc. # 33 at 8), the Magistrate Judge correctly expressed concern that it appeared from the record that the Montgomery Police Department had a practice of arresting individuals without warrants or probable cause and transporting them to the police station for questioning. Nevertheless, as the Magistrate Judge explained in his Report and Recommendation, the subjective intent or legal understanding of the officers at the time of the initial stop does not control the analysis.  (Doc. # 33 at 12-14.)  *See United States v. Hensley*, 469 U.S. 221, 235 (1985) ("To be sure, the [BOLO] at issue did not request that other police departments briefly detain the [defendant] merely to check his identification or confirm the existence of a warrant.  Instead, it asked other departments to pick up and hold [the defendant] for [questioning]. Our decision today does not suggest that such a detention, whether at the scene or at the . . . police headquarters, would have been justified. . . . Nor do we mean to endorse [the issuing police department's] request in its flyer for actions that could

forseeably violate the Fourth Amendment. We hold only that this flyer, objectively read and supported by a reasonable suspicion on the part of the issuing department, justified the length and intrusiveness of the stop and detention that actually occurred.").

It is irrelevant whether the Cpl. Pearson intended to detain Mr. Hogan only long enough to question briefly him in relation to the armed robberies, or for some longer period; what matters is that the stop and detention that occurred were in fact no more intrusive than would have been permitted an experienced officer on an objective reading of the BOLO. *Hensley*, 469 U.S. 234-35. Mr. Hogan argues that the scope of the stop exceeded the permissible bounds of a *Terry* stop because Cpl. Pearson admitted that, from the outset of the traffic stop, Mr. Hogan "was being stopped and detained for questioning," and because Cpl. Pearson applied handcuffs immediately after removing him from the car. (Doc. # 49 at 2.) However, not every "stop" or "detention" is necessarily an "arrest." "[L]aw enforcement officers may seize a suspect for a brief, investigatory *Terry* stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011). As the Magistrate Judge explained in his Recommendation, prior to the existence of probable cause to formally arrest

Mr. Hogan, the scope of the stop, including the application of handcuffs and placing in on the curb for a "couple minutes" to await the arrival of backup officers, was reasonably related to the circumstances that justified a brief investigatory detention, and the detention itself was objectively supported by reasonable suspicion that Mr. Hogan had been involved in armed robberies. Mr. Hogan has not objected to those specific findings of fact and conclusions of law, and the court finds no error in them.

### III.   Conclusion

The court has read the transcripts of the evidentiary hearings and reviewed the evidence in the record.  Having conducted an independent *de novo* review of the Magistrate Judge's findings of fact and conclusions of law to which the objections are made, the court concludes that the objections are without merit.  *See* 28 U.S.C. § 636(b)(1).  Further, the court has carefully reviewed those portions of the Recommendation to which no objection was made and finds no error.  The court finds, therefore, that Mr. Hogan's objections lack merit and that the Magistrate Judge's Recommendation is due to be adopted.

Accordingly, it is ORDERED as follows:

1.   Mr. Hogan's Objections (Doc. # 49) are OVERRULED.

2.   The Magistrate Judge's Recommendation (Doc. # 33) is ADOPTED.

3.   The Magistrate Judge's Supplemental Recommendation (Doc. # 48) is

ADOPTED.

4.      Mr. Hogan's motion to suppress (Doc. # 19) is DENIED.

DONE this 15th day of September, 2015.

_____
/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE
